IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON COLEMAN, | ) Case No. 11-501 SC |
| | ) |
| Plaintiff, | ) ORDER RE: SOUTHERN'S |
| | ) MOTION TO DISMISS |
| v. | ) |
| | ) |
| SOUTHERN WINE & SPIRITS OF CALIFORNIA, INC.; TEAMSTERS LOCAL 853; and BOB STRELLO, | ) |
| | ) |
| Defendants. | ) |

## I. INTRODUCTION

On October 29, 2010, Plaintiff Jason Coleman ("Plaintiff") commenced this action in California Superior Court for the County of Alameda against his former employer, Defendant Southern Wine & Spirits of California, Inc. ("Southern"); his labor union, Defendant Teamsters Local 853 ("Union"); and Union's business representative, Defendant Bob Strello ("Strello") (collectively, "Defendants"). ECF No. 1 ("Notice of Removal") Ex. A ("Compl."). Union removed this action to federal court on February 2, 2011, alleging that Plaintiff's fifth cause of action against Union and Strello for breach of the duty of fair representation was in fact an artfully pleaded claim under the National Labor Relations Act ("NRLA"), 29 U.S.C. § 151.  See Notice of Removal ¶ 3.[1]  Now

---

[1] Southern joined in the removal.  Id.

1  Southern moves to dismiss the action under Rules 12(b)(1) and (6)
2  of the Federal Rules of Civil Procedure; neither Union nor Strello
3  have joined Southern's Motion.  ECF No. 16 ("Mot.").  This Motion
4  is fully briefed.  ECF Nos. 23 ("Opp'n"), 25 ("Reply").  For the
5  following reasons, the Court GRANTS Southern's Motion to Dismiss.

**II.   BACKGROUND**

Plaintiff, a resident of Alameda County, California, identifies himself as "an adult Black male."  Compl. ¶ 3.  Plaintiff alleges that he entered into an employment contract with Southern on or about July 21, 2004.  Id. ¶ 14.  Plaintiff worked full-time for Southern as a warehouse worker.  Id. ¶ 14.  Plaintiff also alleges that he entered into a second contract with Union "whereby Union would represent plaintiff in all matters dealing with his employment while employed by Southern and Does 1-50."  Id. ¶ 15.  Plaintiff alleges that this contract "included but was not limited to" a Collective Bargaining Agreement ("CBA").[2]  Id.

The CBA contains specific provisions that protect Union employees from wrongful termination and that require "just cause" for termination by Southern.  CBA § 18.2.1.  While Southern generally may not terminate a Union employee absent both just cause and a prior warning notice, it may discharge a Union employee for an act of dishonesty without a prior warning notice.  Id.

---

[2] Southern attached to its Motion the declaration of Tom Passantino ("Passantino"), who identifies himself as the Director of Human Resources for Southern.  Id. ¶ 1.  Passantino attaches to his declaration an exhibit which he declares is the CBA.  A court may generally consider a document outside the complaint when deciding a motion to dismiss if the complaint specifically refers to the document and if its authenticity is not questioned.  Townsend v. Columbia Ops., 667 F.2d 844, 848-49 (9th Cir. 1982).  Plaintiff does not challenge the authenticity of the CBA, and the Court considers it in ruling upon this Motion.

2

1  The CBA contains a non-discrimination clause:

> The Employer and the Union agree to comply with applicable Federal and/or State laws to prevent discrimination against any employee or applicant for employment or union membership on the basis of race, color, creed, sex, sexual orientation, marital status, age, disability, pregnancy, national origin, work-related injuries, [or] Veteran status, as such are defined by applicable State or Federal Law.

Id. § 2.3.1.  It also provides an optional mediation process, id. § 19.2, and a mandatory arbitration process, id. §§ 19.3-8.  It provides for final binding arbitration of "disputes and grievances arising hereunder involving interpretation or application of the terms of this Agreement, including any statutory or common law claims of sex, race, age, disability or other prohibited discrimination."  Id. § 19.1.1.  It states: "Should a dispute arise with respect to such issues and should the parties fail to reach agreement, such dispute shall be submitted to final and binding arbitration to determine an appropriate remedy under applicable law and this Agreement."  Id. § 19.4.4.  It also provides: "No employee or group of employees covered herein shall be subject to an individual agreement separate and apart from this Agreement."  Id. § 1.2.1.

Plaintiff alleges that one of Southern's work rules required an employee to notify Southern at least one hour before the scheduled start time if he or she was unable to report for work.  Compl. ¶ 18.  If an employee was unable to work due to an illness, he or she was required to provide a doctor's note.  Id.

Plaintiff alleges that he was absent from work from November 11 to 17 of 2008.  Id. ¶ 21.  When he returned to work, he provided a written medical excuse from his medical provider, Kaiser

3

Permanente. Id. ¶ 22.[3] However, Southern suspended Plaintiff from work pending an "investigation" for a "No Call, No Show" for November 11, 12, and 13, 2008. Id. ¶ 24. After performing this investigation, which Plaintiff claims violated his privacy rights, Southern denied his medical excuse on the basis that Plaintiff was merely trying to cover up an incarceration at the county jail. Id. ¶ 30. Plaintiff does not deny that he was incarcerated from November 11 to 13, 2008, but claims that notwithstanding his incarceration, he was also ill and had been seen by his doctor and had returned to work with the note required by company policy. Id. ¶ 32. On November 25, 2008, Plaintiff was terminated for "falsification of employee records." Id. ¶ 27.

Plaintiff pursued arbitration of his wrongful termination claim as provided in the CBA. Id. ¶ 29. Plaintiff alleges that Union and Strello assisted Plaintiff with his grievance "in a perfunctory manner," but opted against pursuing arbitration of his wrongful termination claim. Id. ¶ 40. Plaintiff applied for unemployment benefits, and was denied on the basis that Southern had reported that Plaintiff had been terminated for an act of dishonesty under the CBA. Id. ¶¶ 44, 45.

Plaintiff claims that Southern's justifications for terminating him were "false and made as a pretext to terminate plaintiff because of his race." Id. ¶ 34. He alleges that Southern revised its reason for terminating Plaintiff multiple times, initially suspending him for a "no call no show," then terminating him for "conspiring with another employee," and subsequently revising the basis of dismissal to "falsification of

---

[3] Plaintiff attached what he alleges to be the written medical excuse to his Complaint as Exhibit 3.

4

employee records" and later "falsification of time card." Id. ¶¶ 41, 42. He claims that Southern and Union treated Hispanic employees differently than Black employees, alleging: "Defendants have allowed plaintiff's supervisors to speak to plaintiff's colleagues in a different language other than English, so that plaintiff and other Black employees could not follow their conversations." Id. ¶ 26. Plaintiff alleges that this "had the effect of alienating and ostracizing plaintiff and the other Black employees," and that "[w]rong acts and other behavior of Hispanic employees were kept hidden or instantly corrected since Spanish was not spoken by the Black employees." Id. Additionally, Plaintiff alleges that "Defendants told plaintiff that they used the internet to spy on him" by checking his "personal files with the County of Alameda" to determine his whereabouts. Id. ¶¶ 38, 29.

Plaintiff brings fourteen causes of action. First, against Southern, he alleges discrimination based on race. Id. ¶¶ 51-59. Second, against all Defendants, he alleges violation of article I, section 8 of the California Constitution[4], alleging Defendants "willfully and intentionally preferred a predominant Hispanic and other non-Black workforce," and "granted preferential treatment to Hispanics and other non-Blacks in the hiring, management and enforcement of policies and procedures." Id. ¶¶ 52- 66. Third, against Union and Strello, he alleges discrimination based on race. Id. ¶¶ 67-77. Fourth, against Southern, he alleges retaliation. Id. ¶¶ 78-80. Fifth, against Union and Strello, he alleges breach of the duty of fair representation, alleging that Union and Strello

---

[4] Article I, section 8 of the California Constitution provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

5

had failed to honor "an obligation under the CBA to fairly represent plaintiff with respect to process any grievances under the CBA." Id. ¶¶ 81-86. Sixth, against Union, he alleges breach of contract, claiming Union failed to pursue arbitration on behalf of Plaintiff as provided in the CBA. Seventh, against Union, he alleges breach of fiduciary obligation, alleging Union owed Plaintiff "a contractual and fiduciary duty for full and adequate representation," and that Union breached that duty by failing to "pursue and/or represent Plaintiff in his wrongful termination claim." Id. ¶¶ 93, 94. Eighth, against Southern and Union, he alleges "fraud/misrepresentation," claiming they "made representations, promises, material omissions and conducted themselves in a deceptive manner" and "misrepresent[ed] the true reason of Defendants termination of Plaintiff." Id. ¶¶ 98, 99. Ninth, against Southern, Plaintiff alleges wrongful termination "in violation of well-established public policies, as set forth in various statutes and Constitutional provisions including, but not limited to, [California] Government Code § 12940, § 12948, [and] § 12926." Id. ¶ 103. Tenth, against all Defendants, Plaintiff brings a claim for intentional infliction of emotional distress ("IIED"). Id. ¶¶ 107-12. Eleventh, against all Defendants, Plaintiff brings a claim for negligent infliction of emotional distress ("NIED"). Id. ¶ 113-17. Twelfth, against all Defendants, Plaintiff brings a defamation claim, alleging that "Defendants made public false and unprivileged oral and written statements of and concerning plaintiff" that damaged Plaintiff. Id. ¶¶ 118-23. Thirteenth, against all Defendants, Plaintiff alleges invasion of privacy, claiming Defendants made "public, false and unprivileged

6

oral and/or written statements that directly injured and continues to injure plaintiff in respect to his profession by imputing him general disqualifications and characteristics that employment requires." Id. ¶ 126.  Plaintiff identifies Southern's statement that he falsified employment and time records as such a statement. Id.  Finally, against Southern, Plaintiff brings a claim for "invasion of privacy -- false light," alleging that Southern published information about Plaintiff which was "without merit and false in its context," which "led to the recipients of the information to assume false conclusions about plaintiff." Id. ¶ 133.

Southern moves to dismiss all of Plaintiff's claims as preempted by section 301 of the Labor Management Relations Act ("LMRA") or, alternatively, as insufficiently pleaded under Twombly and Iqbal.  See Mot.

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

When a defendant submits a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the propriety of the court's jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  As a court of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).  A Rule 12(b)(1) jurisdictional attack may be facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial

attack, the defendant challenges the basis of jurisdiction as alleged in the complaint; however, in a factual attack, the defendant may submit, and the court may consider, extrinsic evidence to address factual disputes as necessary to resolve the issue of jurisdiction, and no presumption of truthfulness attaches to the plaintiff's jurisdictional claims. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

### B. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing part of the nature of the claim so that the party may effectively defend against it" and sufficiently plausible such that "it is not unfair to require the

opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

**IV. DISCUSSION**

Of the fourteen causes of action pleaded in the Complaint, ten are brought against Southern: discrimination based on race; violation of article I, section 8 of the California Constitution; retaliation; fraud/misrepresentation; wrongful termination; IIED; NIED; defamation; invasion of privacy; and invasion of privacy -- false light. See Compl. Southern argues that all should be dismissed with prejudice as preempted by section 301 of the LMRA or, alternatively, dismissed as insufficiently pleaded under Twombly and Iqbal.

**A. Failure to State a Claim**

Southern argues that none of Plaintiff's claims are pleaded with the specificity required by Twombly and Iqbal. With the possible exception of Plaintiff's discrimination and wrongful termination claims, the Court agrees. In pleading a claim for retaliation, Plaintiff does not identify the protected activity he engaged in that caused Southern to retaliate.[5] Instead, he strings together a series of legal conclusions: he claims that he suffered injury "[a]s a direct and proximate result of the retaliation and discrimination perpetrated against plaintiff by defendants," and claims that punitive damages are appropriate because "Defendants

---

[5] The elements of the claim for retaliation are "(1) the employee's engagement in a protected activity, that is, opposing any practices forbidden under the statute; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation." Mamou v. Trendwest Resorts, Inc., 165 Cal. App. 4th 686, 713 (Ct. App. 2008).

acted fraudulently, maliciously, and oppressively with the intent to injure plaintiff." Compl. ¶¶ 78- 80. Plaintiff's claim for "fraud/misrepresentation" is devoid of facts that would support a plausible claim against Southern; furthermore, as a claim sounding in fraud, this claim is subject to -- and fails to satisfy -- the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Plaintiff states: "Defendants made representations, promises, material omissions and conducted themselves in a deceptive manner," but fails to identify who made these statements or omissions, what made them false, or when they were made. In bringing IIED and NIED claims, Plaintiff states Southern's actions in terminating his employment were "extreme and outrageous" without providing facts to support this legal conclusion. In pleading his defamation and two invasion-of-privacy claims, Plaintiff states, "Defendants made public false and unprivileged oral and written statements of and concerning plaintiff," but does not identify these allegedly damaging statements, the individuals who made them, or the parties to whom they were communicated.

Plaintiff's Complaint must give Southern fair notice of the nature of the claim so that Southern can effectively defend against it. Starr, 633 F.3d at 1204. It fails to do this. Because improper pleading generally only justifies dismissal with leave to amend and preemption under section 301 of the LMRA is a basis for dismissal with prejudice, the Court continues its analysis below.
///
///
///
///

10

**B.   Preemption**

Southern argues that Plaintiff's claims are preempted by section 301 of the LMRA.[6]  Mot. at 4.  While the LMRA does not include an express statutory preemption provision, the Supreme Court has long held that section 301(a) preempts state law to ensure Congress's goal of creating a uniform doctrine of federal labor law.  Teamsters v. Lucas Flour Co., 369 U.S. 95, 104 (1962).  This preemptive effect "extend[s] beyond suits alleging contract violations."  Allis-Chalmers Corp. v Lueck, 471 U.S. 202, 210 (1985).  This ensures that the LMRA "will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed . . . . nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements."  Livadas v. Bradshaw, 512 U.S. 107, 122-23, (1994) (internal quotation marks and citation omitted).

To determine if a claim is preempted under section 301, a court must first determine whether the cause of action involves a right conferred upon an employee by virtue of a CBA.  See Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007).[7]  "[S]tate-law rights and obligations that do not exist independently

---

[6] Southern argues that this supports dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.  The Court finds this argument perplexing; Southern cites no law supporting its argument that federal preemption is a jurisdictional matter.  As such, the Court evaluates Southern's argument under Rule 12(b)(6), and determines whether, in light of federal preemption, Plaintiff has failed to state a claim upon which relief can be granted.

[7] The Ninth Circuit in Burnside characterized this as a "two-step" analysis.  Id.  As the Court will discuss, in 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456 (2009), the Supreme Court subsequently abrogated Allis-Chalmers Corp. v Lueck, 471 U.S. 202 (1985), effectively adding an intermediary step between these two steps.

11

of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted." <u>Allis-Chalmers</u>, 471 U.S. at 213. If a right is not conferred by the CBA, the court must determine whether the CBA identifies the claim and contains a provision that clearly and unmistakably requires its binding arbitration. <u>14 Penn Plaza LLC v. Pyett</u>, 129 S. Ct. 1456, 1474 (2009). If so, absent an effective waiver of the arbitration right, the Court lacks jurisdiction to hear the claim. <u>Id.</u> If the right is neither conferred by the CBA nor subject to binding arbitration, the court must determine whether the cause of action is "substantially dependent on analysis of a collective-bargaining agreement." <u>Burnside</u>, 491 F.3d at 1059 (quoting <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 394 (1987)). If the claim requires the court to "interpret," rather than merely "look to," the CBA, then the claim is substantially dependent on the CBA and is preempted by section 301(a). <u>See id.</u> at 1060.

       1.   <u>Claims Involving a Right Conferred by the CBA</u>

Because of the pleading deficiencies in Plaintiff's Complaint, it is difficult for the Court to determine, at this juncture, whether Plaintiff's claims involve rights conferred by the CBA. To the extent that Plaintiff alleges that he was denied the benefits of the CBA -- such as by alleging that Southern terminated him absent just cause or without regard for the procedure provided for in the CBA -- Plaintiff's claims are preempted. It appears, however, that none of Plaintiff's claims involve rights conferred upon Plaintiff by the CBA -- his racial discrimination, retaliation, fraud, defamation, and invasion of privacy claims could possibly be raised even if no CBA existed. As such, the

12

1 Court tentatively finds that, as currently pleaded, none of
2 Plaintiff's claims involve a right conferred by the CBA.

### 2. Claims Subject to Binding Arbitration

Southern argues that Plaintiff's retaliation, wrongful termination, and two discrimination claims should be dismissed because the CBA contains a provision requiring arbitration of such claims, citing Pyett. Mot. at 6. In Pyett, the Supreme Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." 129 S. Ct. at 1474. It noted that the Second Circuit had wrongly interpreted its opinion in Alexander v. Gardner-Denver Co., 415 U.S. 36, 58 (1974) to forbid the enforcement of CBAs requiring arbitration of statutory rights related to equal employment opportunities. Id. at 1466-67.

Here, the CBA provides:

> It is the desire of both parties to this Agreement that disputes and grievances arising hereunder involving interpretation or application of the terms of this Agreement, <u>including any statutory or common law claims of sex, race, age, disability or other prohibited discrimination</u>, shall be settled amicably or if necessary, by final and binding arbitration as set forth herein.

Id. § 19.1.1 (emphasis added). The Court finds that this language clearly and unmistakably requires arbitration of Plaintiff's claims premised on racial discrimination. As such, Plaintiff's racial discrimination claim and claim under article I, section 8 of the California Constitution are preempted. To the extent that Plaintiff's retaliation and wrongful termination claims are premised on Southern's alleged discrimination on the basis of race, these claims are also preempted.

Plaintiff makes four arguments that Pyett should not apply: (1) Plaintiff is no longer an employee of Southern; (2) Plaintiff sought arbitration and Union refused to represent him in arbitration proceedings; (3) Pyett concerned a violation of ADEA rather than state law claims of race discrimination; and (4) Plaintiff was "intentionally prevented from exercising and protecting his rights."  Opp'n at 7.

As to Plaintiff's first argument, Plaintiff cites no law that suggests his termination from employment with Southern frees him from his obligations under the CBA.  Plaintiff's second argument -- that he sought arbitration and was refused -- is considered and rejected in Pyett.  The Court acknowledged "the union's exclusive control over the manner and extent to which an individual grievance is presented" and the possibility that "a union may subordinate the interests of an individual employee to the collective interests of all employees in the bargaining unit."  129 S. Ct. at 1472 (citing Gardner-Denver, 415 U.S. at 58, n.19).  The Court determined that this potential conflict of interest did not render arbitration provisions unenforceable, and noted a union's decision to not pursue a grievance on behalf of one of its members for discriminatory reasons could give rise to an action under the NLRA by the employee against the union.  Id. at 1473.

Third, Plaintiff's argument that Pyett in inapposite because it concerns an ADEA claim lacks merit.  While Pyett concerns a claim of age discrimination rather than racial discrimination, it clearly and unequivocally limited the Court's earlier decision in Gardner-Denver forbidding enforcement of provisions requiring the arbitration of an employee's statutory claims under the Civil

14

Rights Act. Id. The Court distinguished its holding from the holding of Gardner-Denver on the grounds that the CBA in that action did not "expressly reference" the statutory claim at issue, whereas the CBA in Pyett "clearly and unmistakably" provided for arbitration of ADEA claims. Id. at 1468. The Court wrote of Gardner-Denver and its progeny: "Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions." Id. (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991)).

Finally, Plaintiff cites no law -- and makes no colorable argument -- that Pyett is inapposite due to his allegation that Southern and Union "intentionally prevented [him] from exercising and protecting his rights."

For these reasons, the Court finds that all of Plaintiff's claims concerning racial discrimination on the part of Southern are subject to binding arbitration. As such, the Court DISMISSES WITH PREJUDICE Plaintiff's first claim for discrimination based on race; second claim for violation of Article I, section 8 of the California Constitution; fourth claim for retaliation; and ninth claim for wrongful termination in violation of public policy.

### 3. Claims Requiring Interpretation of the CBA

Southern argues that all of Plaintiff's claims are preempted "because they are based on Southern's investigation and termination of Plaintiff," and thus "depend wholly upon an interpretation of what investigatory and disciplinary actions Defendant was authorized to take under the CBA." Mot. at 4.

15

As stated supra, the Plaintiff's claims are too poorly pleaded to determine if interpretation of the CBA is required. However, the Court determines that the bulk of Plaintiff's claims are extremely susceptible to preemption on this ground. To the extent that Plaintiff's claims are premised on Southern's actions in investigating Plaintiff's absence and terminating his employment, they require interpretation of the CBA and are preempted. See Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1149-50 (9th Cir. 1988) (preempting plaintiff's emotional distress claim arising out of her discharge and employer's conduct in the investigation leading up to it). Many of Plaintiff's claims appear to be premised on Southern's investigation and subsequent termination of Plaintiff. For example, if Plaintiff alleges that Southern invaded his privacy by investigating his absence, such a claim would be preempted. If Plaintiff's defamation claim concerns statements made in accordance with the investigation and termination, his claim is likely preempted. See Tellex v. Pac. Gas & Elec. Co., 817 F.2d 536, 538-39 (9th Cir. 1987).

As such, the Court DISMISSES, WITHOUT PREJUDICE, the remaining claims against Southern. Plaintiff is granted thirty (30) days leave to amend his complaint. Should Plaintiff fail to amend his complaint within this time frame, the Court will dismiss all claims against Southern WITH PREJUDICE and dismiss Southern from this action. This Order leaves untouched Plaintiff's claims against Union and Strello.

///
///
///

**V.   CONCLUSION**

For the above reasons, the Court GRANTS Defendant Southern Wine & Spirits of California, Inc.'s Motion to Dismiss, DISMISSING Plaintiff Jason Coleman's claims against Southern as follows:

- Plaintiff's first claim for discrimination based on race; second claim for violation of Article I, section 8 of the California Constitution; fourth claim for retaliation; and ninth claim for wrongful termination in violation of public policy are DISMISSED WITH PREJUDICE.
- Plaintiff's remaining claims against Southern are DISMISSED WITH LEAVE TO AMEND.

IT IS SO ORDERED.

Dated:   August 2, 2011            
                                   UNITED STATES DISTRICT JUDGE