IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON COLEMAN, | ) Case No. 11-00501 SC |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | ) |
| SOUTHERN WINE & SPIRITS OF CALIFORNIA, INC.; TEAMSTERS LOCAL 853; and BOB STRELO, | ) |
| Defendants. | ) |

## I.   INTRODUCTION

Now before the Court is Defendants Teamsters Local 853 ("Union") and Bob Strelo's ("Strelo") (collectively, "Defendants") Motion to Dismiss Plaintiff Jason Coleman's ("Coleman") First Amended Complaint ("FAC").  ECF No. 38 ("Mot.").  The Motion is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and is fully briefed.  ECF Nos. 40 ("Opp'n"), 41 ("Reply").  For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss WITHOUT LEAVE TO AMEND.

///
///
///
///

## II. BACKGROUND

### A. Factual Background

As it must on a Rule 12(b)(6) motion to dismiss, the Court takes all well pleaded factual allegations as true. Plaintiff, a resident of Alameda County, California, identifies himself as "an adult Black male." ECF No. 35 ("FAC") ¶¶ 3-4. Plaintiff alleges that he entered into an employment contract with Southern Wine & Spirits of California, Inc. ("Southern") on or about July 21, 2004. Id. ¶ 14. Plaintiff worked full-time for Southern as a warehouse worker. Id. Plaintiff alleges that he entered into a second contract with Union "whereby Union would represent plaintiff in all matters dealing with his employment while employed by Southern and Does 1-50." Id. ¶ 15. Plaintiff alleges that, throughout his employment, Union and Strelo, a Union representative, promised Plaintiff that they would assist with mediating and/or arbitrating employment issues between Plaintiff and Southern. Id. ¶¶ 8, 20. Plaintiff alleges that his Union contract "included but was not limited to" a Collective Bargaining Agreement ("CBA"). Id. ¶ 15.

Plaintiff alleges that one of Southern's work rules required an employee to notify Southern at least one hour before the scheduled start time if he or she was unable to report for work. Id. ¶ 18. If an employee was unable to work due to an illness, he or she was required to provide a doctor's note. Id.

Plaintiff alleges that he was absent from work from November 11 to 17 of 2008. Id. ¶ 21. When he returned to work, he provided a written medical excuse from his medical provider, Kaiser Permanente. Id. ¶¶ 22, 25.[1] Plaintiff's supervisor allegedly told

---

[1] Plaintiff attached what he alleges to be the written medical excuse to his FAC as Exhibit 3.

2

several of Plaintiff's co-workers that Plaintiff was a "liar" and that his medical excuse was a ruse. Id. ¶ 26. Further, during Plaintiff's absence, Southern's human resource director allegedly told co-workers that he was incarcerated and encouraged them to "go online" to see for themselves. Id. ¶ 24.

Southern suspended Plaintiff from work pending an "investigation" for a "No Call, No Show" for November 11, 12, and 13, 2008. Id. ¶ 27. After performing this investigation, which Plaintiff claims violated his privacy rights, Southern denied his medical excuse on the basis that Plaintiff was merely trying to cover up an incarceration at the county jail. Id. ¶¶ 29-30. Plaintiff does not deny that he was incarcerated from November 11 to 13, 2008, but claims that notwithstanding his incarceration, he was also ill and had been seen by his doctor and had returned to work with the note required by company policy. Id. ¶ 25. On November 25, 2008, Plaintiff was terminated for "falsification of employee records." Id. ¶ 30.

Plaintiff initially sought arbitration as provided in the CBA. Id. ¶¶ 31, 38. Plaintiff alleges that Union and Strelo assisted Plaintiff with his grievance "in a perfunctory manner," but opted against pursuing arbitration. Id. ¶ 38. Plaintiff applied for unemployment benefits, and was denied on the basis that Southern had reported that Plaintiff had been terminated for an act of dishonesty under the CBA. Id. ¶¶ 42-43.

Plaintiff claims that Southern's justifications for terminating him were "false and made as a pretext to terminate plaintiff because of his race." Id. ¶ 34. He alleges that Southern revised its reason for terminating Plaintiff multiple

3

times, initially suspending him for a "no call no show," then terminating him for "conspiring with another employee," and subsequently revising the basis of dismissal to "falsification of employee records" and later "falsification of time card." Id. ¶¶ 38, 39. He claims that Southern and Union treated Hispanic employees differently than Black employees, alleging: "Hispanic employees . . . have both been convicted of felonies and absence from a scheduled work shift without suffering any penalty and certainly not the loss of position at Southern." Id. ¶ 35. Additionally, Plaintiff alleges that "Defendants told plaintiff that they used the internet to spy on him" by checking his "personal files with the County of Alameda" to determine his whereabouts. Id. ¶ 36.

### B. Procedural History

On October 29, 2010, Plaintiff commenced this action in California Superior Court for the County of Alameda against Union, Strelo, Southern, and Does 1 through 50. ECF No. 1 ("Not. of Removal") Ex. A ("Compl."). Union removed this action to federal court on February 2, 2011, alleging that Plaintiff's claim against Union and Strelo for breach of the duty of fair representation was in fact an artfully pleaded claim under the National Labor Relations Act ("NRLA"), 29 U.S.C. § 151. See Not. of Removal ¶ 2.

On April 26, 2011, Southern moved to dismiss the claims in the Complaint brought against it. ECF No. 16 ("Southern MTD"). Neither Union nor Strelo joined in the motion. Id. The Court granted Southern's motion to dismiss on August 2, 2011, granting Plaintiff leave to amend some of his claims against Southern. ECF No. 32 ("Aug. 2, 2011 Order") at 17. The Court found that the

4

1  Complaint failed to give Southern fair notice of Plaintiff's claims
2  against it and that all of Plaintiff's claims concerning racial
3  discrimination on the part of Southern were barred as they were
4  subject to binding arbitration. Id. at 10, 15.
5       On September 1, 2011, Plaintiff filed his FAC, asserting ten
6  claims for relief. About two months later, Plaintiff stipulated to
7  the dismissal of his claims against Southern. ECF No. 43. Seven
8  claims remain against Union and/or Strelo: (1) claim one for
9  violation of Article I, Section 8 of the California Constitution
10 ("Article I, § 8") against Union and Strelo, (2) claim two for
11 discrimination based on race against Union and Strelo, (3) claim
12 three for breach of duty of fair representation against Union and
13 Strelo, (4) claim four for breach of contract against Union, (5)
14 claim five for breach of fiduciary obligation against Union, (6)
15 claim nine for intentional infliction of emotional distress against
16 Union and Strelo, and (7) claim ten for negligent infliction of
17 emotional distress against Union. Additionally, in his opposition
18 brief, Plaintiff asks the Court to read into the FAC a claim under
19 42 U.S.C. § 1981 ("Section 1981 claim").
20      Now Union and Strelo move to dismiss all claims brought
21 against them, with the exception of claim three against Union.[2] In
22 their reply brief, they also urge the Court not to allow Plaintiff
23 to avoid dismissal based on a Section 1981 claim that was not
24 specifically pleaded in the FAC.
25 ///
26 ///
27 ///
28

---

[2] Defendants have moved to dismiss claim three against Strelo.

5

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

When a defendant submits a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the propriety of the court's jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). As a court of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1) jurisdictional attack may be facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In a facial attack, the defendant challenges the basis of jurisdiction as alleged in the complaint; however, in a factual attack, the defendant may submit, and the court may consider, extrinsic evidence to address factual disputes as necessary to resolve the issue of jurisdiction, and no presumption of truthfulness attaches to the plaintiff's jurisdictional claims. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

### B. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." <u>Starr v. Baca</u>, 633 F.3d 1191, 1204 (9th Cir. 2011).

**IV.  DISCUSSION**

Union and Strelo argue that claim one fails because Article 1, § 8 does not apply to their conduct; claim two fails because the Court lacks subject matter jurisdiction; claim three fails as to Strelo because union officers and employees are not liable for the duty of fair representation; and claims four, five, nine, and ten are preempted by federal labor law. Mot. at 7-12. Plaintiff fails to meaningfully respond to any of these arguments. As Plaintiff has not spent a great deal of time addressing Defendant's Motion, neither will the Court.

    **A.  <u>Article 1, § 8 of the California Constitution (Claim One)</u>**

In his first claim for relief, Plaintiff alleges that the Union and Strelo violated Article 1, § 8 by "grant[ing]

7

preferential treatment to Hispanics and non-Blacks in the management and enforcement of policies and procedures" and by refusing to aid Plaintiff in arbitration even though "they had arbitrated more serious issues for many non-Black union members." FAC ¶¶ 49, 51. Article I, § 8 provides:

> A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.

Cal. Const. art. I, § 8. As Defendants argue, this provision only applies in cases where a plaintiff has been denied entrance into a profession or has been terminated from the same, but does not apply to claims of harassment or discriminatory treatment. See Strother v. Southern Cal. Permanente Medical Group, 79 F.3d 859, 872-873 (9th Cir. 1996). As neither the Union nor Strelo had the authority to terminate or disqualify Plaintiff from his employment, Plaintiff cannot state a claim against them under Article I, § 8. Accordingly, Plaintiff's first claim is DISMISSED as to Union and Strelo.

**B. Discrimination Based on Race (Claim Two)**

As to Plaintiff's second claim for discrimination based on race, Plaintiff alleges that Union and Strelo violated the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, by: allowing Southern to impose harsher disciplinary standards on him; carelessly and perfunctorily processing his grievance against Southern; imposing harsher standards of representation on him than similarly situated Hispanics and other employees; and "causing a predominate Hispanic and other workforce to persist at Southern." FAC ¶¶ 59, 60, 64.

Under FEHA, a plaintiff must exhaust his or her administrative remedies by filing a complaint with a state investigatory agency before bringing a civil suit. See Cole v. Antelope Valley Union High Sch. Dist., 47 Cal. App. 4th 1505, 1509-1510 (Cal. Ct. App. 1996). Where a plaintiff fails to satisfy these procedural requirements, a court lacks jurisdiction to hear the case. See Miller v. United Airlines, 174 Cal. App. 3d 878, 890 (Cal. Ct. App. 1985). Defendants argue that the Court lacks jurisdiction over Plaintiff's FEHA claim because he does not allege that he has satisfied the administrative exhaustion requirement. Mot. at 8-9. The Court agrees and DISMISSES Plaintiff's second claim for discrimination based on race.

### C. Duty of Fair Representation (Claim Three)

In his third claim, Plaintiff alleges that Union and Strelo violated their duty under the CBA to fairly represent Plaintiff with respect to processing grievances under the CBA. FAC ¶¶ 68-69. Defendants move to dismiss this claim as to Strelo only. Mot. at 9. As Defendants point out, a number of cases have held that individual officers, employees, and members of a union cannot be held liable for breaches of fair representation committed by their union. See, e.g., Peterson v. Kennedy, 771 F.2d 1244, 1257 (9th Cir. 1985). In the instant action, Strelo is alleged to be "employed by and the business representative of [Union]." FAC ¶ 8. Accordingly, Plaintiff cannot hold Strelo liable for Union's alleged breach of its duty of fair representation. The Court DISMISSES claim three as to Strelo. Claim three remains undisturbed as to Union.

///

**D.  Preemption (Claims Four, Five, Nine, and Ten)**

Defendants argue that claims four (breach of contract), five (breach of fiduciary duty), nine (negligent infliction of emotional distress), and ten (intentional infliction of emotional distress) should be recharacterized under the artful pleading doctrine as claims for breach of the duty of fair representation and, as such, are preempted by federal labor law.  Mot. at 10.

Section 301 of the Labor Management Relations Act ("LMRA") preempts state-law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract."  Allis Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985).  "More specifically, LMRA § 301 will operate to preempt a state-law claim whose resolution depends upon the meaning of a CBA."  Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008).  The federal statutory duty of fair representation also "displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."  Id.  "To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship."  Id.

In the instant action, resolution of Plaintiff's fourth and fifth claims clearly turns on Plaintiff's contractual rights under the CBA and, consequently, these claims are preempted.  Plaintiff's fourth claim for breach of contract alleges that "Union failed to proceed with Plaintiff's arbitration against Defendant Southern and Does 1-50 as mandated in the CBA which is a clear and patent breach of the CBA."  FAC ¶ 74.  As to the fifth claim for breach of fiduciary duty, Plaintiff alleges that "Union has a contractual and

10

fiduciary duty for full and adequate representation of the Plaintiff as a union member." Id. ¶ 79. Accordingly, the Court DISMISSES Plaintiff's fourth and fifth claims.

Plaintiff's ninth and tenth claims against Union and/or Strelo for emotional distress are too poorly pleaded to determine if they are preempted. In his ninth claim for intentional infliction of emotional distress, Plaintiff lumps Union and Strelo together with Southern and Does 1-50 and alleges that their acts "were extreme and outrageous and an abuse of their authority." Id. ¶ 105. Plaintiff makes substantially similar allegations against Union in his tenth claim for negligent infliction of emotional distress. See id. ¶¶ 110, 111. It is unclear what acts Plaintiff is referring to other than Union and Strelo's conduct towards Plaintiff in their capacity as his union representative. To the extent that Plaintiff's claims are based on such conduct, they are preempted. Accordingly the Court DISMISSES Plaintiff's ninth and tenth claims.[3]

### E. Section 1981 Claim

In his opposition brief, Plaintiff contends that federal labor law would not preempt a claim brought under Section 1981. Opp'n at 5-6. Plaintiff concedes that he has not specifically pled a Section 1981 claim, but asks the court to read one into the FAC since it purportedly alleges sufficient facts to state such a

---

[3] The Court would normally be inclined to grant Plaintiff leave to amend to cure such poorly pleaded claims. However, the Court identified similar defects in Plaintiff's claims for emotional distress in its August 2, 2011 Order on Southern's motion to dismiss. Aug. 2, 2011 Order at 16. The Court warned that these claims were "extremely susceptible to preemption," but granted Plaintiff leave to amend to clarify. Id. Although Plaintiff was on notice about the weakness of these claims, his FAC provides little more clarity than his Complaint.

11

claim.  Id.  The Court finds that allowing Plaintiff to convert his claims into a Section 1981 action would deprive Defendant of fair notice.  A Section 1981 claim should be asserted in a complaint, not an opposition brief.  Accordingly, the Court declines to read a Section 1981 claim into the FAC.

Plaintiff also asks that, in the event the Court finds a Section 1981 claim has not been properly pled, the Court grant leave to amend so that Plaintiff may specifically allege a Section 1981 claim.  Opp'n at 6.  The Court finds that granting additional leave to amend at this stage is inappropriate.  Plaintiff has already been granted leave to amend once and was on notice of the defects in his Complaint after the Court's August 2, 2011 Order on Southern's motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Teamsters Local 853 and Bob Strelo's Motion to Dismiss Plaintiff Jason Coleman's First Amended Complaint.

- The Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's first claim for violation of Article I, Section 8 of the California Constitution as to Teamsters Local 853 and Strelo; second claim for discrimination based on race as to Teamsters Local 853 and Strelo; third claim for breach of duty of fair representation as to Strelo; fourth claim for breach of contract as to Teamsters Local 853; fifth claim for breach of fiduciary obligation as to Teamsters Local 853; ninth claim for intentional infliction of emotional distress as to Teamsters Local 853 and Strelo; and tenth claim for negligent

12

      infliction of emotional distress as to Teamsters Local 853.
- The third claim for breach of duty of fair representation against Teamsters Local 853 shall remain undisturbed.
- The Court DENIES Plaintiff's request for leave to amend to allege a claim under 42 U.S.C. § 1981.

The hearing scheduled for November 18, 2011 is hereby VACATED. As set forth in the Court's August 23, 2011 Order, the parties are to appear before the Court for a case management conference on December 9, 2011 at 10:00 A.M. in Courtroom 1, 17th Floor at 450 Golden Gate Avenue, San Francisco, California. The parties are to file with the Court a single joint case management statement at least seven days prior to that date.

      IT IS SO ORDERED.

Dated: November 14, 2011 

                                UNITED STATES DISTRICT JUDGE